UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RECEIVED
JUL - 3 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

KABIL ANTON DJENASEVIC
  Prose Plaintiff

Civil Action No. 07-1685-R.W.R

-v-

UNITED STATES ATTORNEY(s) et al
  Defendants.

Plaintiff's Objection to Defendant Opposition
and Second Motion to Compel Discovery, Admission and
for Sanctions pursuant to Fed. R. Civ. Proc. 37 et seq.

**COMES NOW,** Kabil Anton Djenasevic Pro se and subject to United States perjury Laws state the following fact's:

### BACKGROUND FACTS TO CLARIFY

Plaintiff Kabil Anton Djenasevic filed motion and brief in support of Privacy Act violations. Titles U.S.C. §552a(g)(1)(c), (g)(4) <u>Challenging the validity of Records that were and are used to draw Adverse Decission(s) and Support Extradition from South Africa, in Vilation of 40. Fed. register 28,948 40 Fed. Register 28, 964 "Maintenance of Accurate Records</u>. Complaint was filed on September 28, 2007, via Certified Mail # 7006 2150 0004 2649 6056. On Novermber 13, 2007 Post Mark, Certified Mail # 7006 2150 004 7650 2139. Plaintiff filed motion for Discovery and

Admissions in accordance with FEd. R. Civ. Proc. 26(a)(1)(2), 34 (a)(b)(1) and FEd. R. Civ Proc. 36 with a 21 day return requested. **<u>Plaintiff Kabil Anton Djenasevic is challenging Privacy Act violations §552a. Defendant Counsel in the Defendants opposittion to Plaintiff motion to Compel Discovery and Sanctions state falsly to this Honorable Court that "Defendants did not recieve any Discovery or Admission from Plaintiff", where certificate of service show service.</u>** <u>United States Attorney's el al and Counsel have electronic acces and monitor cases and docket entry, Plaintiff has filed multi objection and motion's and defendant's responded to such motions, **[that reference Discovery and Admission]**. Sanctions and Court ordering disclosure and discovery is warranted as a deterance to others for disregard for the rule of Law, and now again making a fale statement to this Honorable Court claiming that discovery and admission were not sent, when if fact defendants make mention in there last motion for dismissal and summary judgment referencing Plaintiffs request for discovery and admission on Pg. 3.</u>

## MEMORANDUM OF LAW IN SUPPORT

Fraud involving moral turpitude is Actual Fraud not merely Constructive Fraud see <u>Therell v. Georgia Marble Holding Corp</u>, 960 F2d 1555, 1563 (11th Cir. 1992). Title 18 U.S.C. §287 makes it a felony to file a false claim with any agency of the government See <u>U.S. v. White</u>, 27 F.3d 1531 (11th Cir. 1999), statement in affidavit claimes are false (see Exhibit #2,3.), statement in

D.E.A. Consent to Search for Bank of America are **False** and **Forged**. (See Exhibit #1 Material Fact).

A statement is materila if it has a natural tendency to influence or [was] or [is] capable of influencing the decission of the tribunal in making a determination required to be made (See Exhibit #17 Adverse Decission §552a). This is the same definition of Materiality used in §1001 prosecutions (See Exhibit #21 Sworn Testimony). The Fraud Criterions are **1)** That a statement was made **2)** That it was False **3)** That it was with specific intent **4)** That it was Material **5)** That it was within the Jurisdiction of an agency of the United States; [Knowingly channeling false records in violation of Privacy Act to draw Adverse Decissions §552a(e)(5)]. Falsity may be established by a false representation or by the concealment of a material fact. See <u>U.S. V. Tubon Builes</u>, 706 F2d 1092 (11th Cir. 1983); <u>U.S. v. TARANTINO</u>, 846 F.2d 1384 (D.C. Cir 1988). Falsity by concealment exist where disclosure of the Concealed information is required by a Statue Government Regulation or form. See <u>UNITED STATES v. HERNANDO OSPINA</u>, 798 F.2d 1570 (11th Cir. 1986).

> Plaintiff Djenasevic's primary and most trustworthy source of information concerning case was the Attorneys's and it is unrealistic to impute Plaintiff's Attorney's knowledge to Plaintfiff if withholding such knowlege, would have furthered alleged fraud. See <u>UNITED STATES v. DENHAM</u> 817 F2d 1307 (8th Cir. 1987) 8 FR. Serv 3rd 151.

This case we deal with break in of girlfriends condo, theft, forgery, perjury, threats, asault, torture, falsification of records, ommission of fact's and knowingly and willfuly fabrication of false

records. Title 5 U.S.C. §552a violations to cover up for such act's to witt "Draft and Promulgate Documents know to be false and misleading with specific intent to draw Adverse Decision, §552a(e)(5). The defendents failed to maintain accurate records and, that it did so intentially, and willfully, and consequently adverse determination was made. See (Exhibit #1,2,3,17,21,28).

Under Section (e)(5),(g)(1)(c) of the Act, the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. " As long as the information contained in agency files is capable of being verified". If the agency willfully or intentionally fails to maintain its records in that way and, as a result it makes a determination adverse to an individual then it will be liable to that person for money damages. The Courts have noted that the Act's remedial purpose was to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny. See <u>Rose v. Dept. of Air Force</u>, 495 F.2d 251, 425 U.S. 352 (1976). Defendants disregard of Plaintiff Djensevic's right of 4th, 5th, 6th, 8th, 14th Amendment and interpolation, cullumny, manifest error and the spoliation of evidence. Plaintiff presents [Exhibit #1] D.E.A. Consent to search Bank of America dated on 1/3/01, that was altered and purjury on reports and testimony to cirumvent true fact's that is in variance with [Exhibit #2]. Affidavit of Ronald Geer D.E.A. That's perjury under oath in a Court of Law, sworn by magistrate Mark Pizzo on 11/25/02. This Affidavit was presented to South Africa thru the defendants D.O.S. and in violation of Privacy Act knowingly and willfully to draw adverse decission. See (Exhibit #17).

Exhibit #21 is in variance with [Exhibit #2], that is perjury and direct testimony, under oath, orcastrated by A.U.S.A. Kathy Jm Peluso.

Spoliation is the intentional aleration concealing or destruction of evidence. [Exhibit #9] Photo's of search that are in variance with sworn testimony of [Exhibit #21]. the "But for Cause", [is] Title 5 U.S.C. §552a Privacy Act violation(s) Plaintiff presents [Exhibit #28] T.P.D. Polcie report,[edited by Sgt. Mormon but not dated]. This report was for an incident on March 19, 2001 in Orlando Florida, Djensevic has never been to Orlando or Palm Beach Florida, and if fact on March 19, 2001 Plaintiff was not in the United States. F.O.I.A. grants a District Court Jurisdiction to enjoin the agency from withholding agency records and order the production of any agency records imporoperly withheld from the Complainant. 5 U.S.C. §552a(4)B) See <u>Geigy Corp v. Mathews</u>, 428 F. Supp 523 (1977). The defendant thru their agents violated Plaintiff's 4th, 5th, 6th, 8th, 14th Amendment rights and Title 18 U.S.C. §241, 242 conspiracy under the Color of Law, Title 28 U.S.C §2680(A)(H) the ["Core Meaning"] of F.O.I.A. Title 5 U.S.C. §552a, 40 Fed. Reg. 28, 948 40 Fed. Reg. 28, 964 which is Congressional intent to protect one from "Adverse Decissions" by use of false and misleading memos, records. The defendants failed to maintain accurate records and, that did so intentially, and willfully and consequently "adverse determination was made".

Title 5 U.S.C. §552a(g)(1)(c) authorizes and individual to bring an action whenever an agency fails to maintain any record concerning any individual with such accuracy, relvance timeliness, and complete-

ness as is necessary to assure fairness in any determination relating to the qualifications, character, rights or opportunities of or benefit to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual. 5 U.S.C. §552a(g)(1)(c) [emphasis added] if the Plaintiff prevails in an action under subsection (g)(1)(c) and demonstrates that the agency's action was "intentional or willfull" the remedy authorized by the Act is monatary damages 5 U.S.C. §552a(g)(4).

**Defendants U.S. Attorney(s) et al fail to support their defense with any sworn affidavits Rule 56(c).** Plaintiff object;s for the record all attempts by defendants Assitant U.S. Attorney(s) manipulation or miscontrued word's, issues and fact's with misquotes, referencing anything to do with sentencing or conviction. [Plaintiff strongly object's to such ploy's and demands legal moralisim]. Plaintiff Kabil Anton Djenasevic Pro se denies all defenses raised by defendants United States Attorney(s) et al in there motion and opposition that are expressly admitted to.

## CONCLUSION

Based on facts and Exhibits provided to this Honorable Court and the need for full disclosure and in camera hearing, to asses the damage and inaccuracies in Plaintiff's Djenasevic files. Apointment of Counsel is warranted, do to the complexity of this case, and the fraudulent activities that caused adverse determination, that even U.S.P. ALLENWOOD maintains files which are false and misleading. Plaintiff prays that this Honorable Court to rule in favor of this

motion, compelling defendants to disclose records and files, and Court to determine sanctions that are appropriate.

Respectfully submitted,
28 U.S.C. §1746

*/s/ Kabil Anton Djensevic*
Kabil Anton Djensevic
41112-018
U.S.P. ALLENWOOD
P.O. BOX 3000
WHITE DEER, PA. 17887

Enclosure(s): Exhibit #1 #2 #17 #21 #28
-Letters, discovery and admissions
(motion copy)

## CERTIFICATE OF SERVICE

I Kabil Anton Djensevic, hereby certify that I have served a true and correct copy of the foregoing, Motion for Plaintiff's objection to defendants opposition and second motion to comel discovery, admission and for sanctions pursuant to Fed. R. Civ. Proc. 37 et seq., to following, via first class mail:

U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
333 CONSTITUTIONAL AVE, N.W.
WASHINGTON, D.C. 20001

U.S. ATTORNEY'S
Attn: Benton Peterson
555 4th Street, N.W.
WASHINGTON, D.C. 20530

and deposited in the United States Mail at the United States Penitentiary, Signed on this __30__ day of __June__ 2008.

Respectfully Submitted,

*/s/ Kabil Anton Djensevic*
Kabil Anton Djensevic

*[Handwritten annotations at top:]*
Exhibit # 17 — 18 U.S.C. §257 makes it a felony Claim w/ Any Agency of Gov. U.S. v. White 27 F.3d. 1531 (11th Cir 1995) — Same Definition used "Materiality" in §1001 Prosecutions.

the arrest and at the time of some of these dealings it may refer to that when some of the offenses specifically with the heroine took place.

*[Handwritten "?!" in margins]*

There is also evidence that you consented in writing to the search and seizure of objects and the stuff found at your premises in the ceiling especially the two fire-arms and the heroine that had been found there.

Now from a practical point of view this court is of the opinion that it seems that in accordance to our law that the (10) search may be ordered and may be held to be admissible.

The evidence stating in the affidavit says that your rights had been explained to you and notwithstanding that you consented to the search of your premises.

As far as that argument is concerned this court is of the opinion that it is without foundation and that it cannot withstand the judgments referred to and the objective facts that had been presented to court surrounding the arrest.

So the second argument cannot hold water now, the third argument is the argument of dual criminality that had been (20) presented to court.

Now let us first deal with the so-called count 1 as conspiracy then the criminal possession of the heroine and the possession with the intent to distribute etcetera.

When one goes to the South African Drugs and Drug Trafficking Act, Act 140 of 1992 it specifically deals with what constitutes dealing.

*[Handwritten: March 5th 2003]*

"In relation to a drug includes performing any act in connection with the transhipment, importation, cultivation, collection, manufacture, supply,

(30)

DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

*Exhibit #1*
*not part of Extradition papers*

*All unhighlighted is forged and a FRAUD.*

## CONSENT TO SEARCH

1. I HAVE BEEN ASKED TO PERMIT SPECIAL AGENTS OF THE DRUG ENFORCEMENT ADMINISTRATION TO SEARCH: (Describe the person, places or things to be searched.)

   SAFE DEPOSIT BOX 3×G
   ~~Bank of America~~ First Union Bank
   IN THE NAME OF HELEN MAFILAS AND ANTONE GENASE
   LOCATED AT 21410 GULF TO BAY
   CLEARWATER, FL
   BOX #168

2. I HAVE NOT BEEN THREATENED, NOR FORCED IN ANY WAY.

3. I FREELY CONSENT TO THIS SEARCH.

4. I HAVE BEEN ADVISED OF MY RIGHTS UNDER MIRANDA by SA GUTER

   1 3 · 2001
   Date

   Signature: *Kabil A. Kraja*

   Witnesses: [signature]

   *SIGNED AT 1ST UNION GARY RUSS WITNESSED THE REPORT SIGNING BUT DID NOT sign out.*

DEA Form — 88
(Oct. 1983)

Previous edition dated 3/76 is Obsolete.

Direct Desen UNITED STATES v. DJENASEVIC  pg 2 of 6 / *Issue!*

Exhibit #21

86

    rough his condominium as well as the hotel.
    Also mentioned that he had a key to the front
    door, that we were welcome to use the key to enter
    the condominium.
 5  Q.    And that was the condominium?
 6        Did you undertake to ensure that he had the
 7  authority to give you consent to search that
 8  condominium?
 9  A.    Yes, ma'am. I asked him a number of
10  questions to determine just that, if he had free
11  and complete access to the condominium, whether he
12  could come and go as he pleased, and if there were
13  any restricted areas in the condominium that he
14  was not allowed or permitted to enter.
15  Q.    How did he respond?
16  A.    He stated that he had complete access. That
17  he lived there with his girlfriend, that he had
18  the key. And again, he directed us to the key and
19  told us that we were more than welcome to search
20  the condominium.
21  Q.    Did anybody take the key that he offered?
22  A.    Yes. The key was given to, I believe,
23  Sergeant Mooreman, who responded to the
24  condominium with a number of other officers and
25  agents.

        SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

87

 1  Q.    And during the time that you were having
 2  this discussion about searching his condominium did
 3  he appear to hesitate in any way?
 4  A.    None whatsoever. In terms of the
 5  condominium as well as the hotel room, he again
 6  was very eager to cooperate, wanted us to know
 7  that he was eager to cooperate, and gave us free
 8  and voluntary permission to search both locations.
 9  Q.    Well, with regard to the hotel room, was
10  that the Ponce De Leon Hotel?
11  A.    Yes, ma'am, that's correct.
12  Q.    Where was that located?
13  A.    It's located in St. Petersburg.
14  Q.    And did he -- how did he give you permission
15  to search that particular location?
16  A.    He stated that he -- that the key to the
17  room was held at the front desk, and that we were
18  welcome to go meet with management and to ask for
19  the key from him.
20  Q.    Did you ask him whether or not there were
21  any drugs or other contraband located in the hotel
22  room?
23  A.    I did, and he claimed that there was no
24  contraband, drugs, or anything in the hotel.
25  Q.    Did you use a consent to search form for

        SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

88

 1  either the condominium or hotel room?
 2  A.    No, ma'am, I did not.  * ?
 3  Q.    Why wouldn't you do that?
 4  A.    It's not recommended -- it's not required,
 5  rather, in terms of DEA policy. At that present
 6  time he was more than eager, actually, to let
 7  everyone know that his willingness to cooperate
 8  completely, not only in the search, but in
 9  statements that he was making.
10        At the time I certainly didn't feel that
11  there would ever be a question as to whether he
12  provided that consent or not.
13  Q.    Were there other officers present during the
14  time that you were obtaining this consent from
15  Mr. Djenasevic?
16  A.    Yes. Sergeant Mooreman was present when the
17  consent was issued. There were other officers
18  that spoke to him throughout the day where he
19  again expressed his eagerness and willingness to
20  cooperate.
21  Q.    Okay. And I think you might have mentioned
22  this earlier, but did you ever tell him he did not
23  have to consent to the searches?
24  A.    I did. We explained it very clearly that he
25  did not have to cooperate. In fact, that the

        SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

89

 1  investigation against him was going to continue
 2  whether he cooperated or not.
 3  Q.    The investigation of him?
 4  A.    Yes.
 5  Q.    And did you ever threaten him in any way?
 6  A.    No, ma'am.
 7  Q.    Did you -- if you had any doubt that he was
 8  sure or freely or knowingly consenting to those two
 9  searches, would you have undertaken to perhaps have
10  him sign a form?
11  A.    Yes, ma'am, I would. In fact, that happened
12  later that day when we asked the consent to search
13  of his safe deposit box. He gave us a number of
14  different stories --
15  Q.    Let me get to that --
16  A.    -- a little later.
17  Q.    -- safe deposit box in just a minute.
18  A.    Yes, ma'am.
19  Q.    Now, you stated earlier he gave you a key
20  and you sent Sergeant Mooreman and other officers
21  to the condominium?
22  A.    Yes.
23  Q.    What did you do?
24  A.    I stayed initially with the defendant. And
25  then myself and a number of officers responded to

        SANDRA K. L    PR  OFFICIAL UNITED STATES COURT REPORTER

Exhibit 2

ASS

and Hillsborough Counties of Florida with violating State of Florida drug laws, to wit trafficking in heroin.

13. After I advised DJENASEVIC of his United States Constitutional rights to remain silent and have representation by an attorney, DJENASEVIC agreed to be interviewed by me without an attorney, answer questions concerning his heroin trafficking activities, and cooperate with law enforcement.

*Key Lie*   &   *Did not consent & Sign nothing*

14. DJENASEVIC signed a written consent to search the condominium in which he resided with his girlfriend at #908, 851 Bayway Blvd, Clearwater, Florida. DJENASEVIC also consented to a search of the room he had rented at the Ponce DeLeon Hotel in St Petersburg, Florida. No drug evidence was recovered from the hotel room, although, a copy of the room billing was obtained by me, reflected that there were no incoming or outgoing telephone calls. DJENASEVIC told me that he had used the Ponce DeLeon Hotel to hide and process heroin for distribution. *Lie*

15. Law enforcement officers of the DEA, HCSO, TPD and PCSO conducted a search of 851 Bayway Blvd #908, Clearwater, Florida. Several documents were seized in addition to two (2) small caliber handguns, that is, a Taurus, Model PT11, 9mm handgun, Serial Number TSC31497, and a Jennings, Model J22, .22 caliber handgun, Serial Number 713971, and approximately $20,000 in U.S. currency. The currency and the firearms were hidden above ceiling tiles in the bathroom. Over 207.02 grams of heroin were seized from above the ceiling tiles in the kitchen. DJENASEVIC told me that the guns and heroin found in the ceilings of the condominium had belonged to him. DJENASEVIC told me that the heroin seized in his possession at the *Lie* Bennigan's Restaurant and the 207.02 grams of heroin seized from above the kitchen

*On November 25, 2002*

6

*Affidavit by ISA* [illegible]

Exhibit #28

# TAMPA POLICE DEPARTMENT INVESTIGATIVE REPORT

Page 1 of 1

*Offense*: Trafficking in Heroin            *Location*: Hillsborough County

*Victim/Firm*: ALBERTO APONTE            *Address*: Miami, Florida

TPD Report #01-009475

**Supplement:** On March 19, 2001, this writer assisted Detective J. Hinkle with the listed narcotics investigation. This writer went to the Orlando, Florida area and served as the Under Cover agent during a buy-bust operation which had originated from a wire-intercept in Tampa, Florida. Cooperating defendant MARCOS GUZMAN, had order a quantity of heroin from his supplier in Miami, Florida and I was to be his money man during the transaction. The meeting was staged at the McDonald's restaurant located just off I-4 and International Drive.

At the time the defendants arrived I observed defendant ALBERTO APONTE walk from the front of the restaurant towards the rear parking lot area looking for anything suspicious in the parking lot. GUZMAN walked along side of APONTE towards my vehicle and shortly thereafter ERIC ARVELO ORTIZ and JEFFREY MANUEL PADIN-HERNANDEZ, walked from the front of the restaurant and joined APONTE. They all entered my vehicle in the rear passenger seat. APONTE was seated directly behind the driver's side. PADIN-HERNANDEZ was seated in the rear middle and ORTIZ was seated at the rear right side behind the front passenger. APONTE handed me the package containing the heroin and I handed it to GUZMAN for him to hold it. GUZMAN then asked me to hand the money over to APONTE. When I handed the money to APONTE, I observed him, ORTIZ and PADIN-HERNANDEZ counting the money in the back seat. APONTE indicated that we were $500.00 dollars short and demanded that we produce the money owed to him. I then told him that perhaps the rest of the money was in the trunk of the car and I exited the vehicle to look for it. APONTE also exited the rear of the vehicle and followed me to the rear of the vehicle. I opened the vehicle trunk and very quickly closed the same in view of the fact that there was police equipment inside of it. We both then returned to the vehicle and APONTE continued demanding the money owed to him. I became a little concerned because APONTE was becoming angry and he was seated directly behind me. I then exited the vehicle and walked away towards the front of the vehicle, at this point the arresting units effected the arrests of all the parties involved. APONTE who had exited the vehicle with me threw the money over a chainlink fence and away from him. All three subjects were arrested without incident and taken to the Orange County Jail. The subjects elected not to talk with or cooperate with Law Enforcement at the time of the arrest.

Date of Incident: March 19, 2001            Report Number: 01-009475

Reporting Officer(s): Detective JOSE A. FELICIANO, 32749
Narcotics Bureau, Special Operations Group

Edited by: Sgt. Norman            Date:

1-C10/Narc.

## Carol Kenyon

**To:**
**Subject:**  Melanie Slack; Mickey Kroger
Package of legal documents -

I received a call from Kabil Djenasevic and an email from his wife today stating that his attorney had sent us a package of documents and a request for a suppression motion. We have not received this. The attorney's name is David T. Weisbrod, Esq.
Law Office of David T. Weisbrod 4121 E. Madison St. Ste.1111Tampa, FL  33602 and he has an email.  The client is indicted under Djenasevic but has an assortment of alias.  I have email this guy and given the PIM to RCR to try to follow-up.  But if either of you would take a moment to check and see if for some reason you ended up with something inadvertantly from attorney Weisbrod, please let me know.  In all reality, I doubt if you have but am just covering our collective backsides on this.

Thanks

1