UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KABIL ANTON DJENASEVIC,              )
                                    )
            Plaintiff,               )
                                    )
      v.                             )   Civil Action No. 07-1685 (RWR)
                                    )
EXECUTIVE UNITED STATES              )
ATTORNEY'S OFFICE, *et al.*,         )
                                    )
                                    )
            Defendants.              )
_____)

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. Defendants' motion will be granted.

I.   BACKGROUND

Plaintiff was arrested by state authorities in Florida in December 2000 and was released from a county jail in February 2001 after posting bond. *United States v. Djenasevic*, No. 06-11593, 2007 WL 2709901, at *1 (11th Cir. Sept. 18, 2007) (per curiam), *cert. denied*, __ U.S. __, 128 S.Ct. 1320 (2008). Although plaintiff had been cooperating with authorities in an ongoing heroin trafficking investigation, "[b]y March 2001 . . . he absconded and was subsequently arrested in South Africa while attempting to board a flight to Yugoslavia." *Id.* Plaintiff was extradited to the United States. *See* Compl. at 4; Plaintiff['s] Pro Se Opposition to Defendant['s] Counsel's Request for Summary Judgment and or in the Alternative Dismissal ("Pl.'s Supp. Opp'n"), Ex. (Affidavits of Ronald L. Geer and Kathy J.M. Peluso in Support of

Request for Extradition). "In October 2002, a federal indictment was filed against [plaintiff], and, in November 2002, a superseding indictment was filed, charging him with conspiracy to possess one kilogram or more of heroin with intent to distribute, distribution of heroin, possession with intent to distribute 100 grams or more of heroin, and possession of firearms." *Djenasevic*, 2007 WL 2709901, at *1. Plaintiff pled guilty to all counts of the superceding indictment. *See id.* at *2-3.

Plaintiff, who describes himself as a citizen of Montenegro, brings this action under the Privacy Act, *see* 5 U.S.C. § 552a.[1] *See* Compl. at 1-2, 4. He alleges that inaccurate information originating from various government agencies is maintained by the Federal Bureau of Prisons ("BOP") in his Inmate Central File. *See id.* at 2. Further, plaintiff alleges that the United States Department of State ("State Department"), the Drug Enforcement Administration ("DEA"), the Executive Office for United States Attorneys ("EOUSA"), and the Federal Bureau of

---

[1] Notwithstanding plaintiff's demands for the release or *in camera* review of certain documents, *see, e.g.,* Compl. at 1, 5, plaintiff does not articulate a claim under the Freedom of Information Act, *see* 5 U.S.C. § 552. From his repeated references to the Privacy Act and to two reported cases, *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002) and *Deters v. United States Parole Comm'n*, 85 F.3d 655 (D.C. Cir. 1996), together with his insistence that federal government records contain false and inaccurate information about him, the Court concludes that plaintiff intends to proceed only under the Privacy Act.

To the extent that plaintiff alleges defendants' violations of rights protected by the United States Constitution, *see* Compl. at 2, these claims must be dismissed. The Privacy Act provides a comprehensive remedial scheme for a government agency's failure to maintain records with the requisite level of accuracy or to amend such records. *See Wilson v. Libby*, 535 F.3d 697, 709-10 (D.C. Cir. 2008) (comprehensive remedial scheme in Privacy Act precludes remedy for damages claim for constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)); *Chung v. United States Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming "dismissal of Chung's constitutional claims because, as the district court correctly held, they are encompassed within the remedial scheme of the Privacy Act").

Investigation ("FBI") provided false statements to the South African embassy "trigger[ing] his expulsion" from South Africa and his extradition to the United States. *See id.* at 4, 7. Plaintiff does not identify the information that allegedly is inaccurate or that is "<u>FALSE & MISLEADING</u>." *Id.* at 4 (emphasis in original). Nor does plaintiff articulate the allegedly adverse decision made in reliance on the inaccurate information, other than to assert that "his Custody was effected." *Id.* at 2.

As the Court construes the complaint, plaintiff alleges that BOP, the State Department, DEA, EOUSA and FBI have refused to amend records pertaining to him upon his request in violation of 5 U.S.C. § 552a(d)(2), and that BOP has failed to maintain its records pertaining to him with the requisite degree of accuracy, relevance, timeliness and completeness in violation of 5 U.S.C. § 552a(e)(5). Plaintiff demands remedies pursuant to 5 U.S.C. § 552a(g)(1)(C), (4). *See* Compl. at 2.

## II.  DISCUSSION

### *A. Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") in relevant part provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, __, 127 S.Ct. 910, 918-19 (2007). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a

precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

The Court presumes that plaintiff must exhaust his administrative remedies with respect to his claims under the amendment and accuracy provisions of the Privacy Act before filing a civil action in a federal district court. *See Bethea v. United States Parole Comm'n*, No. 01-5396, 2003 WL 728946, at *1 (D.C. Cir. Mar. 3, 2003) (per curiam) (assuming without deciding that a federal prisoner must exhaust administrative remedies under the PLRA before pursuing a Privacy Act claim in district court), *cert. denied*, 540 U.S. 880 (2003); *Reid v. Fed. Bureau of Prisons*, No. 04-1845 (ESH), 2005 WL 1699425, *3 (D.D.C. July 20, 2005) (concluding that Privacy Act claim stemming from purportedly inaccurate information in BOP records resulting in assignment to higher security level concerns prison conditions and, therefore, prisoner plaintiff must exhaust Administrative Remedy Program procedures before filing Privacy Act suit).

1. State Department

The State Department's Office of Information Programs and Services ("IPS") "is responsible for the receipt, acknowledgment, and processing of external requests for Department records," including those made by members of the public under FOIA and the Privacy Act. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or, Alternatively, Motion for Summary Judgment ("Defs.' Mot."), Grafeld Decl. ¶ 2; *see* 22 C.F.R. § 171.1 *et seq.* "For Privacy Act requests, the request should state the type of records sought, the

complete name and date and place of birth of the subject of the request, and the timeframe for the records." 22 C.F.R. § 171.5(c). IPS "maintains an automated case tracking system which assigns case control numbers to, and tracks the status of, all FOIA and Privacy Act requests received." Grafeld Decl. ¶ 4. Staff enter information about each request, such as the requester's name, into the automated system. *Id.*

IPS staff searched the automated case tracking system "for a request from or about Kabil Anton Djenasevic for the time period up to the date of [the filing of plaintiff's lawsuit], September 24, 2007."[2] Grafeld Decl. ¶ 6. There was no record that IPS received either a FOIA or Privacy Act request from plaintiff. *Id.*

### 2. Drug Enforcement Administration

Plaintiff submitted a request to the DEA under both FOIA and the Privacy Act. Defs.' Mot., Wassom Decl. ¶ 6 & Ex. A (September 10, 2007 Freedom of Information and Privacy Act Request). He requested access to records "generated in connection with the investigation and prosecution of United States v. Djenasevic, case # 8:02CR424-T-17, in the U.S. District Court for the [Middle District] of Florida (Tampa)." *Id.*, Ex. A at 1. The request neither challenged the accuracy of information nor demanded correction of information in DEA records pertaining to plaintiff. *See id.*

---

[2] The Clerk of Court received plaintiff's original complaint and application to proceed *in forma pauperis* on August 29, 2007. The Court granted plaintiff's application on September 14, 2007, and the Clerk officially filed the application and complaint on September 24, 2007.

3. <u>Executive Office for United States Attorneys</u>

Plaintiff submitted nearly identical requests under both FOIA and the Privacy Act to the EOUSA and to the United States Attorney's Office for the Middle District of Florida. Defs.' Mot., Stearns Decl. ¶ 7 & Ex. A-B (September 10, 2007 Freedom of Information and Privacy Act Requests). Specifically, plaintiff sought "records [] generated in connection with the investigation and prosecution of <u>United States v. Djenasevic</u>, case # 8:02cr424[] in the U.S. District Court for the Middle [District] of Florida (Tampa)." *Id.*, Ex. A. Nothing in the requests suggested that plaintiff challenged the EOUSA's maintenance of records pertaining to him. *See* Stearns Decl. ¶ 8.

4. <u>Federal Bureau of Investigation</u>

The FBI's Criminal Justice Information Services Division ("CJIS") is responsible for acquiring, collecting, classifying, and preserving identification, criminal identification, crime, and other records. Defs.' Mot., Del Greco Decl. ¶¶ 3-4. It "incorporates the Fingerprint Identification Records System (FIRS), the National Crime Information Center (NCIC), and the National Instant Criminal Background Check System." *Id.* ¶ 4. A subject may request access to or correction of an FBI identification record (a "rap sheet") maintained by the FBI, even though CJIS "is not the source of the arrest data reflected on an identification record." *Id.* After reviewing his identification record, if the subject " believes that it is incorrect or incomplete in any respect and wishes changes, corrections or updating of the alleged deficiency, he[] should make application directly to the agency which contributed the questioned information." 28 C.F.R. § 16.34. Alternatively, the subject may:

> direct his[] challenge as to the accuracy or completeness of any entry on his[]record to the FBI, Criminal Justice Information Services (CJIS) Division, ATTN: SCU, Mod. D-2, 1000 Custer Hollow Road, Clarksburg, WV 26306.  The FBI will then forward the challenge to the agency which submitted the data requesting that agency to verify or correct the challenged entry. Upon the receipt of an official communication directly from the agency which contributed the original information, the FBI CJIS Division will make any changes necessary in accordance with the information supplied by that agency.

*Id.*  Review of CJIS files "fails to reveal any correspondence from Plaintiff requesting a copy of his FBI identification records and/or challenging the accuracy [or] completeness of the information contained therein."  Del Greco Decl. ¶ 9.

### 5.  Federal Bureau of Prisons

The BOP's administrative grievance process allows an inmate to "seek formal review of almost any aspect of his incarceration."  Defs.' Mot., Herbin-Smith Decl. ¶ 3.  If an inmate's complaint cannot be resolved informally, he may file a complaint with the Warden of the institution where he is detained; if he is dissatisfied with the Warden's response, he may appeal the decision to the Regional Director, and from there to BOP's General Counsel.  *Id.*  "An inmate has not exhausted the [BOP's] administrative remedy procedures until he has filed a complaint through all three levels."  *Id.*  Defendant demonstrates that, "although Plaintiff has filed other administrative remedies (regarding disciplinary action and medical care) he has not filed any administrative remedies regarding the issues he raised in this complaint."  *Id.* ¶ 5.  Nor has plaintiff "submitted any type of records request [to] the BOP Central Office, FOIA/PA Section."  *Id.* ¶ 6.

With respect to defendants' exhaustion arguments, plaintiff first counters that he has pursued administrative appeals of initial determinations by DEA, FBI, the United States

7

Marshals Service, EOUSA, Interpol and the Bureau of Alcohol, Tobacco and Firearms.  Pro Se Plaintiff's Traverse in Opposition to Defendant(s) Reply Dated January 31, 2008 ("Pl.'s Opp'n") at 5-6.  These appeals apparently pertain to FOIA requests made to these components of the United States Department of Justice, some of which are not named defendants to this action.  Plaintiff fails to establish the relevance of these administrative appeals to the Privacy Act issues presented in this case.

Second, plaintiff shows that he has filed grievances with the BOP Central office and the Hillsborough County Sheriff's Office.  *See* Sworn Affidavit of Plaintiff in Compliance with Feb. 05, 2008 Court Order with Exhibits ("Pl.'s Aff."), Ex. (unnumbered).  Any grievances plaintiff may have filed with the Hillsborough County Sheriff's Office are wholly irrelevant to the issues presented in this case, as the Privacy Act applies only to federal agencies.  *See* 5 U.S.C. §§ 551(1), 552(f).  Similarly, the grievances to BOP's Central Office principally pertain to his demands for medical and dental care, *see id*., and thus shed no light on the claims regarding the amendment or accuracy of BOP records.  There is one grievance, however, through which plaintiff inquires whether he may serve his sentence in Montenegro.  *See id.*, Ex. (Inmate Requests to Staff dated 7/28/06, 12/7/07, and 12/29/07).  A mere inquiry, without some mention of or challenge to the accuracy of information in BOP's records pertaining to plaintiff , is not relevant to the Privacy Act claims presented.  Defendants' motion for summary judgment will be granted.

*B. Privacy Act Claims Against the Federal Bureau of Prisons*[3]

Even if plaintiff had exhausted his administrative remedies before filing this suit, he fails to state a Privacy Act claim against the BOP on which relief can be granted.

1. Amendment and Accuracy Provisions

Subsection (e)(5) of the Privacy Act requires that an agency:

> maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as to assure fairness to the individual in the determination.

5 U.S.C. § 552a(e)(5).  An individual may access an agency's records or information in a system of records pertaining to him, and he may request amendment of those records.  *See* 5 U.S.C. § 552a(d)(1)-(2).  He may file a civil action against an agency which either refuses to amend its records upon request or fails to maintain its records with the requisite level of accuracy and completeness.  *See* 5 U.S.C. § 552a(g); *Sellers v. Bureau of Prisons*, 959 F.2d 307, 310 (D.C. Cir. 1992) (subsection (g) provides civil remedies for violations of subsection (e)(5)).[4]  In a civil

---

[3]  For purposes of the Privacy Act, the term "individual" means "a citizen of the United States or an alien lawfully admitted for permanent residence."  5 U.S.C. § 552a(a)(1).  Defendants argue that plaintiff does not have standing to bring a claim under the Privacy Act because he does not fall within the scope of the term "individual."  *See* Defs.' Mot. at 6 n.1.  Plaintiff's representation that he was a resident alien, *see* Dkt. Pl.'s Opp'n at 10 & Pl.'s Aff. at 1, is adequate to withstand defendants' motion to dismiss for lack of standing.

[4]  In relevant part, subsection (g) authorizes an individual to file a civil action whenever any agency "makes a determination . . . not to amend an individual's record in accordance with his request."  5 U.S.C. § 552a(g)(1)(A).  In addition, subsection (g) allows a civil action whenever an agency:

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications,

(continued...)

suit filed pursuant to subsection (g)(1)(C), if the Court determines that the agency's actions were willful or intentional, the Court may award actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy, and further may award costs of the action and attorney fees.  5 U.S.C. § 552a(g)(4).

Notwithstanding the relief available under the Privacy Act, an agency's Director may promulgate regulations to exempt any of the agency's systems of records from any part of the Privacy Act, *except* subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j)(2).  Pursuant to this authority, regulations exempt BOP's Inmate Central Records System (JUSTICE/BOP-005), among other systems of records, from subsections (c)(3) and (4), (d), (e)(2) and (3), (e)(4)(H), (e)(8), (f) and (g).  *See* 28 C.F.R. § 16.97(a) (4).  Insofar as plaintiff demands amendment of records, whatever their source, maintained by the BOP in his Central File, such relief is not available because these records are exempt from subsection (d)(2), the amendment provision of the Privacy Act.  *See Risley v. Hawk*, 108 F.3d

---

[4](...continued)
> character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).

1396, 1397 (D.C. Cir. 1997) (per curiam) (affirming dismissal of claim for injunctive relief, that is, amendment of allegedly false medical records maintained in BOP files, on the ground that regulations exempt BOP records from amendment provision of Privacy Act); *Sellers v. Bureau of Prisons*, 959 F.2d at 309 (upholding district court's dismissal of claim under subsection 552(d) for amendment of presentence report maintained in BOP inmate files); *Meyer v. Fed. Bureau of Prisons*, 940 F. Supp. 9, 14 (D.D.C. 1996) (denying claim for amendment of custody classification form because system of records where form is maintained is exempt from Privacy Act's amendment provisions).

In addition, regulations exempt BOP's Inmate Central Records System from subsection (e)(5), the accuracy provision of the Privacy Act. *See* 28 C.F.R. § 16.97(j), (k)(2). This exemption effectively deprives plaintiff of a remedy for BOP's alleged failure to maintain its records with the requisite level of accuracy. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (upholding district court's dismissal of claims against BOP because Inmate Central Record System exempt from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5)); *Scaff-Martinez v. Fed. Bureau of Prisons*, No. 05-11119, 2005 WL 3556035, *2 (11th Cir. Dec. 29, 2005) (per curiam) (upholding dismissal of Privacy Act claims for monetary damages because, pursuant to 28 C.F.R § 16.97(a) and (j), inmate records are exempt from 5 U.S.C. § 552a(d), (e)(5), and (g)); *Collins v. Fed. Bureau of Prisons*, No. 5:06cv129-DCB-MTP, 2007 WL 2433967, at *3 (S.D. Miss. Aug. 2, 2007) (holding that plaintiff is not entitled to monetary or injunctive relief on Privacy Act claim challenging accuracy of records maintained in BOP's Central Inmate Record System).

2. <u>Damages Provision</u>

In order to recover monetary damages under the Privacy Act, "a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and, consequently, that an 'adverse' 'determination [was] made' respecting the plaintiff." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552a(g)(1)(C)).  Plaintiff bears the burden of proving that the agency's action in violating the Privacy Act was intentional or willful.  *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984); 5 U.S.C. § 552a(g)(4).  To meet his burden, plaintiff "must prove that the offending agency acted 'without grounds for believing [its actions] lawful' or that it 'flagrantly disregarded' the rights guaranteed under the Privacy Act."  *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (quoting *Albright*, 732 F.2d at 189).  This is a high standard, requiring a showing of "something greater than gross negligence" on the agency's part.  *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987).

Here, plaintiff fails to allege, let alone prove, that he is entitled to an award of damages. Plaintiff not only fails to show that any BOP record pertaining to him is inaccurate, irrelevant, untimely, or incomplete, but also fails to show that BOP acted intentionally or willfully in violation of the Privacy Act.  Absent such a showing, his claim for damages must fail.  *See Doyon v. United States Dep't of Justice*, 304 F. Supp. 2d 32, 35 (D.D.C. 2004) (plaintiff who was unable to establish that prior drug conviction and probation violation charges reflected in presentence investigation report maintained in Inmate Central Records System were clearly wrong did not demonstrate intentional or willful violation of his rights under the Privacy Act), *appeal dismissed*, 2004 WL 2185923 (D.C. Cir. Sept. 24, 2004); *Doyharzabal v. Gal*, No.

7:00-2995-24BG, 2001 WL 35810671, at *3 (D.S.C. Sept. 13, 2001) (plaintiff who offered "little other than bare assertions to support his claim that disputed statements regarding contraband and gang membership were inaccurate" did not establish that BOP records pertaining to him were inaccurate).

III.  CONCLUSION

For the reasons stated herein, the Court concludes that plaintiff failed to exhaust his administrative remedies under the Privacy Act before filing the instant civil action.  Even if he had, the Court finds that he fails to state a claim under the Privacy Act.  Accordingly, the Court will grant defendants' motion.  A final Order accompanies this Memorandum Opinion.

Signed this 30th day of September, 2008.

                                                        /s/
                                    RICHARD W. ROBERTS
                                    United States District Judge